# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Oct 25, 2021
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the following email addresses: williamlibbyiii@yahoo.com and shellylibby1@yahoo.com | )<br>)<br>) Case No.  21  MJ  218<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., Section 842(a)(1); Title 26, U.S.C., Section 5861 | manufacturing and dealing explosives without a license; possession or making a destructive device without appropriate registration |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ATF TFO Alexis Krusic
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: 10/25/2021

*Judge's signature*

City and state: Milwaukee, WI       Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

## Matter No. 2021R00258

I, Task Force Officer Alexis Krusic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Oath Holdings Inc. (formerly known as Yahoo!; hereinafter "Yahoo!"), an email provider, headquartered at 701 First Avenue, Sunnyvale CA 94089. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Oath Holdings Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Task Force Officer (TFO) of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee I Field Office. I am a Detective out of the Criminal Investigations Division with the Milwaukee County Sheriff's Office (MCSO) since 2020. I have been employed with MCSO since January of 2016 and a TFO since March of 2020. My duties as a TFO with ATF include investigating alleged

violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

3. I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection. I have experience with investigations into commercial arsons and criminal damage to property. I have read reports and worked with other officers/agents in complex investigations where I know that criminals put information on social media platforms to convey a message to groups of people.

4. I have been part of MCSO's Explosives Ordnance Disposal Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices.

5. I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice, with a specialty in Crime Analysis, in 2015.

6. I know from training and experience that individuals who commit crimes of selling and manufacturing without a license commonly communicate, photograph, videotape, and organize sales using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

7. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of purchases through interstate

commerce and manufacturing and dealing explosives without an ATF license, in violation of Title 18, United States Code, Section 842(a)(1), and possession or making a destructive device without appropriate registration, in violation of Title 26, United States Code, Section 5861, by William Libby III ("LIBBY III") (M/W, 09/22/1976) and William Libby, Jr. ("LIBBY JR") (M/W, 03/31/54).

9. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

10. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

11. At 12:20 AM on 07/05/2021, the occupants of a silver 2007 Ford 500 four door threw an Improvised Explosive Device (IED) at two Milwaukee Police Officers. The officers were in full uniform and were standing next to their marked Milwaukee Police Department squad car at 1213 N. Water St, in the City and County of Milwaukee. This device exploded, causing the airbags of the squad car to deploy and the two officers to become disoriented. The two officers were transported to the hospital and were treated for concussion-like symptoms. Both officers are still experiencing serious medical issues related to this attack; neither has been able to return to work.

12. The Milwaukee Police Department conducted an open source search and located a public post on www.Facebook.com, regarding the explosives-related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name

of "Derek Smith". This profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed by a laughing emoji.

13. Other Milwaukee Police Officers working in the area obtained the license plate from the sedan the IED was thrown from. The Wisconsin license plate, 14125GT, listed to Derek M. Smith, B/M 03/15/2002. Smith was eventually arrested and confessed to throwing various IED's out of his car on Water Street the evening of July 4, 2021, along with two friends. Smith identified his co-actors as Javier D. Thompson, B/M 05/15/2002, and Gerrell NMN Bufford, B/M, 02/10/2001.

14. Smith gave law enforcement consent to look through his cell phone. On Smith's phone, law enforcement observed a video of a subject holding, lighting, and throwing a white PVC Pipe Bomb near the street at 2414 W. Fond du Lac Ave. on the night of July 4, 2021. This pipe bomb exploded near the street.

15. Smith stated he didn't know who this subject from the video was, specifically, but claimed the subject was related to Bufford. This subject was a black male, 20's with a thin build, slight moustache and chin hair, with tattoos on his arms. This subject was wearing a white tank top, with New York and the number 30 written on the chest.

16. On July 6, 2021 Milwaukee Police Officers went to the address of 2473 W. Walnut St, located in the City and County of Milwaukee. At this residence, Bufford was arrested. Also at this residence was Lawrence T. Turner, B/M, 02/08/1994, who was the half-brother of Bufford. Turner was the subject in the video lighting and throwing the pipe bomb at 2414 W. Fond du Lac Ave.

17. Bufford confessed he was driving around with Smith and Thompson on the morning of July 5, 2021, and acknowledged they were throwing fireworks out of the car.

18. Turner was arrested and confessed to possessing and lighting the pipe bomb from the video on Smith's phone. Turner stated he bought the pipe bomb from an individual who he could call and have deliver more. Turner provided the cell phone number of 414-252-8898 for the subject he called to purchase the pipe bomb from and said the suspect drove a beat-up white pickup truck.

19. On the evening of July 6, 2021, Turner called 414-252-8898 and requested to buy two pipe bombs. Turner arranged to meet the pipe bomb dealer in Washington Park at 1857 N. 40th St.

20. At approximately 9:50 PM that evening, the suspect pulled into Washington Park in an older model white pickup truck. This subject was taken into custody and identified as Demetrius A. Powell (B/M, 02/16/1966).

21. Located on the passenger side floor board, in plain view, was a pipe bomb made of PVC, four M-1000's and 90 M-80's. All of these items were X-rayed and contained powder inside of them.

22. Powell stated he had been buying fireworks and explosives from an individual that goes by "Bill", whose phone number is 414-899-0231. The phone number listed back to William LIBBY III (W/M, DOB 09/22/1976). Powell also identified LIBBY III as "Bill" using a photo lineup.

23. A consensual search of Powell's phone revealed text messages between Powell and LIBBY III regarding the manufacture and sale of explosives. A sample of these messages follows; these messages may have been modified slightly for clarity:

- Friday, June 18, 2021:
    o LIBBY III at 10:51 AM CST: "The address is 7100 38th Ct. with the handicap

- ramp"
  - LIBBY III at 4:47 PM CST: "My powder came today and I made three 6 pounders and one 7 pounder the 6 pounders are $175 and the 7 pounder is $200"
- Saturday, June 26th, 2021:
  - LIBBY III at 9:50 AM CST: "Did you still want the go cart and those big fireworks because I have some people that are interested in them but I'm giving you first grab at them"
  - LIBBY III at 2:23 PM CST: "Are you coming today"
- Friday, July 2, 2021:
  - LIBBY III at 9:16 AM CST: "I am off work today call me"
- Saturday, July 4, 2021:
  - LIBBY III at 5:00 PM CST: "Just so you know I have lots of fireworks left"
  - Powell at 6:19 PM CST: "Ok"
  - LIBBY III at 9:56 PM CST: "I'm here"
  - LIBBY III at 10:22 PM CST: "The add is 5133 N 38th st"

24. Powell stated that he purchased explosives from LIBBY III near the area of 38th and Lancaster/Villard on a dead end street. He also described purchasing explosives at a nearby home, located at 5133 N 38th St.

25. Powell stated he doesn't make these devices; he just sells them as a middle-man to make money. Powell stated: "Fireworks is just like drugs you know what I'm saying. Middleman selling them, I made a few dollars off the motherfuckers." Powell confirmed he was going to sell the explosives in his possession to the guy who set him up. Powell stated the "M-80's" are $10, the "sticks" are $30 and the "two pounder" is $50.

26. A search warrant was executed at Powell's residence located at 4657 N. 36th St, Apt. 1 Milwaukee, WI. Located at the residence was a clear plastic zip lock bag that contained several improvised explosive devices commonly referred to as M-80's. This bag of M-80's was photographed and recovered. An X-ray of these devices was taken and showed they contained an unknown type of powder.

27. On July 7, 2021, a search warrant was executed at 5133 N 38th St. Milwaukee, WI, the residence that Powell met LIBBY III at to purchase the explosives. The residence belongs to LIBBY III's brother John J. Libby (W/M, DOB 9/18/1979), along with his girlfriend Sarah Cupertino (W/F, DOB 01/04/1992). Items located at the residence were 47 improvised explosive devices commonly referred to as M-80's. These devices were inside a "Great Value" brand plastic zip lock bag. This bag was labeled "M80" and with the number "100". The M-80's seized from the search warrant at 5133 N. 38th St. were similar to the M-80's seized from a vehicle driven by Powell on July 6, 2021. They were also similar to the bag of M-80's recovered from inside Powell's apartment at 4657 N. 36th St. #1.

28. During the search warrant John Libby was interviewed by law enforcement and stated that his brother LIBBY III brought over bags of "M-80" type devices to John Libby's residence. LIBBY III told John Libby that he generated a post on Facebook that he was selling his "Fun Sticks," which John Libby knew to be fireworks and M-80's.

29. On July 8, 2021, a search warrant was executed at the residence of LIBBY III, 6216 W. Boehlke Ave. Milwaukee, WI. An individual later identified as James Gaines (B/M, DOB 8/13/1978) was present at the residence. Gaines stated he was at the residence picking up some of his belongings. Items found at the residence were latex gloves, glue gun, LIBBY III's driver's license, and a white piece of paper with a note identifying an email of loudbang187@gmail.com,

with a password of "Firework123" handwritten on it. Officers also found a cardboard box with a shipping label from CannonFuse LLC, containing a packing slip from a company using the URL "CannonFuse.com". This packing slip listed the following items were shipped to LIBBY III at 6216 W. Boehlke Ave. and are used in the manufacture of "M" type devices: Cannon Fuse (quantity of 4), Tube, 9/16" x 1.5" x 1/16" (500 pcs), Red Plastic Plugs, 9/16" (1000 pcs), Hot Glue Sticks Tube, 1" x 2.5" x 3/32" (quantity of 4), Red Plastic Plugs, 1" (quantity of 5) Tube, 1" x 6" x 3/8" (quantity of 5).

30. On Tuesday, July 13, 2021, LIBBY III was arrested at S84W18759 Enterprise Dr. in the City of Muskego, WI, the location of a business called Specialty Machine Products. LIBBY III was employed by this business.

31. Nicholas Zmudzinski is the owner of Specialty Machine Products. Zmudzinski stated that LIBBY III had worked for him off and on for the past ten years. LIBBY III's father, LIBBY JR., also worked for him part time. Zmudzinski was aware why William LIBBY III was arrested and explained that last year LIBBY III gave him what was referred to as a "1/4 stick," described as being approximately 3/4" x 2" in size with a fuse. Zmudzinski said after he lit the fuse, there was a loud explosion when the "1/4 stick" blew up. Zmudzinski stated LIBBY JR. also told him he was selling the "1/4 sticks"; however, Zmudzinski did not buy any of them from LIBBY JR.

32. A query of ATF Explosive Licensing Database revealed that neither LIBBY JR. nor LIBBY III have a license to possess or manufacture explosives nor have they ever applied for one.

33. Law enforcement received records from CannonFuse LLC regarding its dealings with LIBBY JR. and LIBBY III, pursuant to lawful legal process. According to those records,

LIBBY III made purchases from CannonFuse LLC dating back to July 30, 2018 with the most recent purchase on June 26, 2021.

34. LIBBY III used his current home address of 6216 West Boehlke Avenue in the City of Milwaukee as the shipping address on all of his orders, which was where the state residential search warrant was executed and was still the current address of Libby in July of 2021.

35. LIBBY III used the email address of [williamlibbyiii@yahoo.com](mailto:williamlibbyiii@yahoo.com) on all of his orders with CannonFuse LLC.

36. LIBBY JR. had purchases dating back to July 5, 2018, with his most recent purchase coming June 27, 2021. LIBBY JR used his current home address of 7100 N 38th Court in the City of Milwaukee as the shipping address on his orders.

37. LIBBY JR. used the email address of [shellylibby1@yahoo.com](mailto:shellylibby1@yahoo.com) for his orders. LIBBY JR's name was on all of his invoices with this email address.

38. Both LIBBY JR. and LIBBY III purchased large quantities of items known by law enforcement to be used in the manufacture of improvised explosive devices from CannonFuse LLC, including fuse, tubes, plugs, hot glue, and a hot glue gun.

39. As of 2021, LIBBY III and LIBBY JR. were still using their Yahoo! email addresses to send and receive emails. In general, an email that is sent to Yahoo! subscriber is stored in the subscriber's "mailbox" on Yahoo!'s servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Yahoo!'s servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Yahoo!'s servers for a certain period of time.,

# BACKGROUND CONCERNING EMAIL

40. In my training and experience, I have learned that Yahoo! provides a variety of on-line services, including electronic mail ("email") access, to the public. Yahoo! allows subscribers to obtain email accounts at the domain name @yahoo.com, like the email accounts listed in Attachment A. Subscribers obtain an account by registering with Yahoo!. During the registration process, Yahoo! asks subscribers to provide basic personal information. Therefore, the computers of Yahoo! are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo! subscribers) and information concerning subscribers and their use of Yahoo! services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

41. A Yahoo! subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo!. I know that Yahoo! Users have access to the following user services:

**Subscriber Information**

- Subscriber information supplied by the user at the time of registration, including name, location, date account created, and services used.
- IP addresses associated with log-ins to a user account are available for up to one year.
- Registration IP address data available for IDs registered since 1999.

**Yahoo! Chat/Messenger**

- Friends List for Yahoo! Messenger.

- Time, date, and IP address logs for Chat and Messenger use within the prior 45-60 days.

- Archives of Web Messenger communications may be stored on Yahoo! servers if at least one party to the communication chose to archive communications.

**Yahoo! Groups**

- Member list, email addresses of members, and date when members joined the Group.

- Information about Group moderators.

- Contents of the Files, Photos, and Messages sections.

- Group activity log describing when members subscribe and unsubscribe, post or delete files, and similar events (not being able to contain attachments to messages).

**Yahoo! GeoCities, Domains, Web-hosting, and Stores**

- Active files user has uploaded to the website and date of file upload.

- For stores, may have store transactional data.

**Yahoo! Profiles**

- Contents of a user's profile: time, date, and IP address logs of content added.

42. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

43. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

44. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

45. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically

retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

46. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent

via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

47. Based on the forgoing, I request that the Court issue the proposed search warrant.

48. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Yahoo!.  Because the warrant will be served on Yahoo!, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Matter No. 2021R00258

## Property to Be Searched

This warrant applies to information associated with williamlibbyiii@yahoo.com and shellylibby1@yahoo.com that is stored at premises owned, maintained, controlled, or operated by Oath Holdings Inc. (formerly known as Yahoo!), a company headquartered at 701 First Avenue, Sunnyvale CA 94089.

# ATTACHMENT B

# Matter No. 2021R00258

# Particular Things to be Seized

**I.      Information to be disclosed by Oath Holdings Inc. (formerly known as Yahoo!) (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the accounts from July 5, 2018 to June 27, 2021, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 21 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of Possession or making a destructive device without NFA registration, and manufacturing or dealing explosives without an ATF license, those violations involving Libby III and Libby JR and occurring after June 5, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) The purchase, possession, and sale of manufacturing or dealing explosives without a license and possession and manufacturing of a destructive device without NFA registration;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crimes under investigation; and,

(d) The identity of the person(s) who created or used each account, including records that help reveal the whereabouts of such persons.